UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JESSICA WOODS
and JOSHUA EVANS,

       Plaintiffs,

v.                               Civil Action No. 2:13-6467

OXFORD LAW, LLC
and JOHN DOES 1-10,

       Defendants.

<u>MEMORANDUM OPINION & ORDER</u>

Pending is the plaintiffs' motion for default judgment, filed June 26, 2014.  This suit was initiated in this court on March 28, 2013.


I. Factual and Procedural Background


At some point (the complaint does not say when), the plaintiffs, Jessica Woods and Joshua Evans, "incurred a financial obligation in the approximate amount of $532" to Care Credit, which is not named as a defendant.  Compl. ¶ 8.  "The [d]ebt arose from services . . . [that] were primarily for family, personal or household purposes[.]"  <u>Id.</u> ¶ 9. Thereafter, the debt was either "purchased, assigned or transferred to Oxford [Law, LLC ("Oxford")] for collection, or Oxford was employed . . . to collect the [d]ebt."  <u>Id.</u> ¶ 10.

In or around September of 2012, "Oxford started contacting [the plaintiffs] in an attempt to collect the [d]ebt by placing calls to [the plaintiffs'] residential telephone." Id. ¶ 12.  According to the complaint, Oxford employed a number of abusive tactics and harassed the plaintiffs in doing so. Specifically, the plaintiffs allege that Oxford "failed to identify the name of its company and failed to state that" it was calling to collect a debt; "misleadingly identified itself as an attorney's office"; "accused [Evans] of lying and falsely stated [that Evans] was trying to avoid the [d]ebt"; "threatened [Evans] that Oxford would visit the [p]laintiffs if they failed to satisfy the [d]ebt"; and "failed to send . . . written validation of the [d]ebt[.]"  Id. ¶¶ 13-16, 21.

The complaint also claims that Oxford "repeatedly" disregarded Evans' request to stop calling about the debt and to correspond with the plaintiffs only in writing.  Id. ¶¶ 17-18. Finally, even after Evans "informed Oxford that [the plaintiffs] had retained legal representation and provided Oxford with their attorney's contact information,"[1] Oxford "proceeded to place an

---

[1] Though the complaint does not say so, the motion for default judgment and the affidavits attached thereto indicate that the plaintiffs "retained the services of . . . counsel and notified Oxford of the same around early March 2013."  See Plaintiffs' Motion for Default Judgment ("Pls.' Mot.") ¶ 11; see also id., Ex. A ("Evans Aff.") ¶ 10 ("In or around March 2013, we retained the services of Lemberg Law, LLC, in an effort to stop Oxford's

additional call to [the plaintiffs] on March 14, 2013." Id. ¶¶ 19, 20.  The plaintiffs assert that Oxford's actions caused them to suffer "humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment." Id. ¶ 23.

In their complaint, Evans and Woods charge Oxford and John Does 1-10[2] with violating numerous provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, et seq., ("WVCCPA").  The complaint seeks actual and statutory damages under the FDCPA, statutory damages under the WVCCPA, and the recovery of attorney's fees and costs.  Id. at Prayer(1)-(7).

---

harassment.  I promptly informed Oxford we had retained counsel and provided Oxford with our attorney's contact information. Oxford placed at least one additional call seeking to collect the [d]ebt on March 14, 2013, after being informed of such.").

[2] The plaintiffs have not moved to amend the complaint to identify the John Does, nor served the Doe defendants as required by Federal Rule of Civil Procedure 4(m).  Accordingly, all claims against John Does 1-10 are dismissed without prejudice.  Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against the defendant[.]").

## II. Oxford Law's Default

Service of process on the defendant was achieved on April 8, 2013, but Oxford failed to answer the complaint. As a result, on October 22, 2013, the court ordered the plaintiffs to submit a motion for entry of default judgment by not later than November 6, 2013. The plaintiffs thereafter "attempted to confer with [] Oxford in an attempt to resolve the matter." Plaintiffs' Motion to Enforce the Settlement Agreement ("Motion to Enforce") ¶ 4 (ECF No. 8, filed February 26, 2014). On November 6, 2013, rather than filing a motion for entry of default, the plaintiffs filed a notice of settlement, indicating that the parties had reached an agreement, and advising that a voluntary dismissal would be forthcoming within sixty days. Unfortunately, the parties were ultimately unable, after months of fruitless attempts, to complete a contemplated written agreement. In an order dated June 6, 2014, the court denied the plaintiffs' request to enforce the terms of a preliminary verbal settlement allegedly reached by the parties, and directed them to instead move for default judgment.[3]

In response, on June 26, 2014, the plaintiffs filed the pending motion for default judgment, reiterating the

---

[3] The Clerk entered Oxford's default on June 4, 2014.

substance of the complaint, and repeating their request for
damages under the FDCPA and WVCCPA.

### III. Plaintiffs' Claims

With respect to the FDCPA, the plaintiffs seek
judgment against Oxford for violating 15 U.S.C. § 1692c(a)(2) by
contacting them after learning that they were represented by
counsel; violating 15 U.S.C. § 1692d(2) by using abusive
language when speaking with "the consumer"; violating 15 U.S.C.
§ 1692d(5) by "caus[ing] a phone to ring repeatedly and
engag[ing] the [p]laintiffs in telephone conversations, with the
intent to annoy and harass"; violating 15 U.S.C. § 1692d(6) by
placing calls to the plaintiffs without disclosing its identity
as a debt collection agency; violating 15 U.S.C. § 1692e(3) by
misleading the plaintiffs "into believing the communication was
from a law firm or an attorney"; violating 15 U.S.C. § 1692e(11)
by "fail[ing] to inform the consumer that the communication was
an attempt to collect a debt"; violating 15 U.S.C. § 1692f "in
that [Oxford] used unfair and unconscionable means to collect a
debt"; and violating 15 U.S.C. § 1692g(a) by "fail[ing] to send
[the plaintiffs] an initial letter within five days of its
initial contact with [the plaintiffs.]"  Memorandum of Law in

Support of Plaintiffs' Motion for Default Judgment ("Pls.'
Mem.") at 4-8; see also Compl. ¶¶ 24-37.[4]

With respect to the WVCCPA, the plaintiffs seek
judgment against Oxford for violating section 46A-2-123(a) by
falsely representing that they were a law firm or attorney;
violating section 46A-2-124(a) by "express[ly] or implicitly
threaten[ing] use of violence or other criminal means to cause
harm to [the plaintiffs]"; violating section 46A-2-124(f) by
threatening to take action prohibited by the FDCPA that is of
the same nature as subsection -124(a); violating section 46A-2-
125(b) by placing calls to the plaintiffs without disclosing its
identity; violating section 46A-2-125(d) by repeatedly calling
the plaintiffs at "unusual times or at times known to be
inconvenient"; violating section 46A-2-127(h) by "falsely
represent[ing] the status or true nature of" Oxford's business
(that is, debt collection); and violating section 46A-2-128 by
"us[ing] unfair or unconscionable means to collect the [d]ebt."
Pls.' Mem. at 8-11; see also Compl. ¶¶ 38-53.

They request "at least $1,000.00 in statutory damages
under the FDCPA; $19,302.24 in statutory damages for at least
four violations of the WVCCPA; $50,000.00 to compensate [them]

---

[4] The complaint also included the allegation that Oxford violated
§ 1692e(10), but no reference to that subsection is found within
the motion for default judgment.

for their actual damages; and a reasonable award of their attorney's fees and litigation costs."  Pls.' Mot. ¶ 37.

Affidavits from Evans and Woods are attached to the motion.  Evans attests that Oxford identified itself as an attorney's office but did otherwise inform the plaintiffs of "the true name of their company"; threatened to "come 'visit'" the plaintiffs if the debt was not paid; accused Evans of lying about his inability to pay the debt; continued to call the plaintiffs after Evans requested that Oxford not do so; called the plaintiffs on March 14, 2013 after being informed that the plaintiffs were represented by counsel; and failed to send the plaintiffs any written validation of the debt.  Evans Aff. ¶¶ 6-11.  He states that he "suffered damages, anger, fear, embarrassment, anxiety, emotional distress, and frustration as a result of Oxford's" actions.  Id. ¶ 12.  Woods' affidavit contains substantially identical information.  See generally Pls.' Mot., Ex. B ("Woods Aff.").

## IV. Legal Standard

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.  Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise, the clerk must enter the party's default."  Once default has been entered by the clerk, the plaintiff may move the court to enter a default judgment against the defendant pursuant to Rule 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  But "a default judgment may be lawfully entered only 'according to what is properly to be decreed upon the statements of the bill, assumed to be true,' and not 'as of course according to the prayer of the bill.'"  Nishimatsu, 515 F.2d at 1206 (quoting Thomson v. Wooster, 114 U.S. 104, 113 (1885) (internal quotations and citations omitted)), quoted in Ryan, 253 F.3d at 780.  In other words, "[t]he defendant is not held . . . to admit conclusions of law," Ryan, 253 F.3d at 780 (quoting Nishimatsu), and the "court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in" the motion for default judgment, id., see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 n.23 (2d Cir. 2011) ("Most of our sister circuits appear to have held expressly that a district court may not enter a default judgment unless the plaintiff's complaint states a valid

8

facial claim for relief." (citing cases from the First, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits)).

For purposes of that analysis, well-pleaded allegations are those that offer something more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Wooten v. McDonald Transit Assocs., Inc., 775 F.3d 689, 695-96 (5th Cir. 2015) (applying Iqbal and Twombly to determine whether a default judgment was "supported by well-pleaded allegations"); DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (holding that allegations in the complaint that merely "parrot the language" of a statute "are not well-pleaded facts" but "simply [] legal conclusions" that are not "admitted through default").

Assuming that the well-pleaded facts demonstrate that the plaintiff is entitled to relief, the court must next make an independent determination concerning the damages to be awarded. See S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005); see also Ryan, 253 F.3d at 780-81. Courts will not simply accept the plaintiff's statement of damages, but instead must ensure that damages are appropriate. Adams v. Barker, No. 10-423, 2013 WL 310561, at *3 (S.D. W. Va. Jan. 25, 2013)

(Copenhaver, J.) (citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  Rule 55(b) authorizes the court to "conduct hearings or make referrals" in order to, inter alia, "determine the amount of damages[,]" Fed. R. Civ. P. 55(b), and the court may also rely on affidavits and other documentary evidence to determine the appropriate damages amount, Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 795-96 (D. Md. 2010).

## V. Discussion

### A. Statutory Violations for which Damages are Sought

#### 1. FDCPA Claims

"To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see also Boosahda v. Providence Dane LLC, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (same).

A consumer debt is defined as an obligation or alleged obligation "to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]"  15 U.S.C. § 1692a(5).  In this case, the complaint states that the plaintiffs "incurred a financial obligation . . . ar[ising] from services . . . [that] were primarily for personal, family or household purposes," Compl. ¶¶ 8-9, and that Oxford "attempted to collect" on that debt on several occasions, id. ¶¶ 11-13.  As a result, the well-pleaded facts in the complaint establish that the plaintiffs were the object of collection activity arising from a consumer debt as defined by the FDCPA.

Regarding the second element, the FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Here, it appears that Oxford is a debt collector within that definition inasmuch as the complaint establishes that Oxford is a Pennsylvania company operating as a collection agency; that Oxford used the telephone to engage in

11

debt collection; and that Oxford was assigned or employed to collect the debt on behalf of a creditor.  Compl. ¶¶ 5, 11-12.

As for the third element, the plaintiffs assert that Oxford engaged in several activities prohibited by the FDCPA. Each is discussed in turn.

### 15 U.S.C. § 1692c(a)(2)

Section 1692c(a)(2) prohibits a debt collector from communicating with a consumer about a debt without prior consent "if the debt collector knows the consumer is represented by an attorney with respect to such debt[.]"  15 U.S.C. § 1692c(a)(2). Here, Evans "informed Oxford that [the plaintiffs] had retained legal representation and provided Oxford with their attorney's contact information," but Oxford "proceeded to place an additional call to [the plaintiffs] on March 14, 2013."  Compl. ¶¶ 19, 20.  Accordingly, the defendant violated § 1692c(a)(2).

### 15 U.S.C. § 1692d

Section 1692d of the FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  The plaintiffs charge Oxford with engaging in three of a non-exhaustive list of activities that fall within that prohibition.

12

*§ 1692d(2)*

First, the plaintiffs assert that Oxford used "obscene or profane language or language the natural consequence of which is to abuse the hearer" in violation of § 1692d(2) by accusing Evans of lying about his ability to repay the debt.  That language is neither profane nor obscene, so the question is whether it constitutes "language the natural consequence of which is to abuse the hearer."  See Horkey v. J.V.D.B. & Assocs., Inc., 333 F.3d 769, 774 (7th Cir. 2003) (holding that the consequence of the words, rather than the intent of the speaker, is the determinative inquiry).  In answering that question courts apply an objective, "consumer protective standard" that asks whether the challenged language would naturally abuse "a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985); Dorsey v. Morgan, 760 F. Supp. 509, 515 (D. Md. 1991) ("[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." (quoting Jeter)); Johnson, 867 F. Supp. 2d at 779 (same).

The "more susceptible consumer" standard is a corollary of the "least sophisticated consumer" standard that

courts regularly apply to claims of misrepresentation and deception under § 1692e.  See Jeter, 760 F.2d at 1179 ("[W]e believe that the consumer protective purposes of the FDCPA require us to adopt an analogous standard for violations of § 1692d."); see also United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136-38 (4th Cir. 1996) ("As the Second Circuit has explained, evaluating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles[.]").

To be sure, § 1692d does not shield consumers from the "inconvenience and embarrassment that are natural consequences of debt collection," nor prohibit "debt collectors from making non-abusive statements designed to encourage voluntary payment[.]" Beattie v. DM. Collections, Inc., 754 F. Supp. 383, 394 (D. Del. 1991); see also Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 475 (D. Mass. 2013) (same). Rather, the Act seeks to protect consumers from truly abusive language "akin to profanity or obscenity," such as "name-calling, racial or ethnic slurs, and other derogatory remarks," Jeter, 760 F.2d at 1178, that form no part of a civil attempt to recoup funds but instead consist of ad hominem attacks on the consumer.  See 123 Cong. Rec. 10241 (1977) ("In essence, what this means is that every individual, whether or not he owes a

debt, has the right to be treated in a reasonable and civil manner."); 123 Cong. Rec. 10243 ("Passage of the [FDCPA] is important if consumers throughout this country are to be protected from the mental anguish, and intimidation that are the consequences of abusive debt collection practices."); 123 Cong. Rec. 10246 ("We are trying to protect against the glaring examples of unsavory debt collection practices.").

Whether accusing a consumer of lying fits into the former category or the latter is a close question over which courts have divided. Compare Chiverton v. Fed. Fin. Grp., Inc., 399 F. Supp. 2d 96, 101 (D. Conn. 2005) ("The defendant violated § 1692d(2) by calling [the plaintiff] a 'liar.'"), and United States v. Central Adjustment Bureau, Inc., 667 F. Supp. 370, 375-76 (N.D. Tex. 1986) (concluding that the defendant violated the FDCPA by using, among other considerably more profane and obscene phrases, "terms like 'liar, deadbeat, crook,'" and "god-damn liar"), with Bassett v. I.C. Sys., Inc., 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010) (holding that debt collector who called the consumer a liar did not violate § 1692(d)(2)), and Mammen v. Bronson & Migliacco, LLP, 715 F. Supp. 2d 1210, 1218 (M.D. Fla. 2009) (holding that the statement "You're lying," directed towards a consumer who denied having previously lived in California was not "akin to profanity or obscenity" and did

15

not constitute "personal name-calling").  Nevertheless, without
deciding whether every use of the word "liar" or "lying" is
abusive, and while recognizing that the accusation may in a
given circumstance be a truthful one relating to a material
matter, the court is satisfied that the particular accusation
made in this case would naturally tend to abuse the hearer.

Accusing a consumer of lying about his ability to
repay suggests that the consumer is willfully refusing to honor
his obligation.  It implies, in other words, that the consumer
is acting dishonorably -- that he is one of the "miniscule"
number of "deadbeats" who borrow money that they never intend to
repay.  See S. Rep. No. 93-382, at 2 (1977), reprinted in 1977
U.S.C.C.A.N. at 1696 ("One of the most frequent fallacies
concerning debt collection legislation is the contention that
the primary beneficiaries are 'deadbeats.'  In fact, however,
there is universal agreement among scholars, law enforcement
officials, and even debt collectors that the number of persons
who willfully refuse to pay debts is miniscule.").  That is
precisely the sort of demeaning insult that, in the debt
collection context, is likely to abuse the consumer,
particularly one whose circumstances make him "relatively more
susceptible to harassment, oppression, or abuse."  Accordingly,
Oxford violated § 1692d(2) by accusing Evans of lying about his

ability to repay the debt.  <u>See</u> Federal Trade Commission, <u>Staff Commentary on the Fair Debt Collection Practices Act</u>, 53 Fed. Reg. 50097, 50105 (1988) ("Abusive language includes religious slurs, profanity, obscenity, <u>calling the consumer a liar or a deadbeat</u>, and the use of racial or sexual epithets." (emphasis added)).[5]

*§ 1692d(5)*

Second, the plaintiffs contend that Oxford violated § 1692d(5) by placing "numerous calls" to the plaintiffs, and continuing to do so after receiving instruction to correspond with the plaintiffs only in writing.  Pls.' Mem. at 5-6.

Subsection 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  There is no bright-line test for determining whether debt-collection calls constitute actionable harassment. Rather, courts weigh and consider a number of factors, including the frequency, pattern, and nature of the calls to determine

---

[5] The staff commentary is, "a guideline intended to clarify . . . interpretations of the statute," but by its own terms, "does not have the force or effect of statutory provisions," and "is not binding on the Commission or the public."  53 Fed. Reg. at 50101.  It is therefore not accorded conclusive weight, but may be considered if it does not conflict with the plain language of the statute.  <u>See</u> <u>Heintz v. Jenkins</u>, 514 U.S. 291, 298 (1995).

whether they violate § 1692d(5).  See Bassett, 715 F. Supp. 2d
at 809-10 ("[A]ctionable harassment or annoyance turns on the
volume and pattern of calls made[.]" (internal citations and
quotation marks omitted)); Akalwadi v. Risk Mgmt. Alternatives,
Inc., 336 F. Supp. 2d 492, 505-06 (D. Md. 2004) (same); Joseph
v. J.J. Mac Intyre Cos., LLC, 238 F. Supp. 2d 1158, 1168 (N.D.
Cal. 2002) (same); see also Bridge v. Ocwen F. Bank, FSB, 681
F.3d 355, 363 (6th Cir. 2012) (considering it relevant, at
motion to dismiss stage, that debt collector ignored repeated
requests to cease communications with consumer); Fox v. Citicorp
Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994)
("Threatening and intimidating calls to a consumer at an
inconvenient time or place could rationally support a jury
finding of harassing conduct.").

      In some instances, the sheer volume of debt collection
calls may be sufficient to establish a violation.  Compare,
e.g., Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d
589, 597-99 (E.D. Pa. 2012) (holding that ten calls per week for
eleven week period was sufficient volume of calls to state a
claim under § 1692d(5)), with, e.g., Breeders v. Gulf Coast
Collection Bureau, 796 F. Supp. 2d 1335, 1338 (M.D. Fla. 2011)
(holding that calls placed between 8:00 a.m. and 11:00 a.m. no
more than once every two days did not violate FDCPA).  But the

18

requisite "intent to annoy, abuse, or harass" on the part of the debt collector may also be inferred from a combination of the call frequency and other conduct, such as repeatedly calling a consumer who has asked not to be contacted, Gilroy v. Ameriquest Mortg. Co., 632 F. Supp. 2d 132, 136 (D.N.H. 2009), or repeatedly contacting a consumer known to be represented by counsel, cf. Fox, 15 F.3d at 1516 n.10 (holding that conduct that would violate § 1692c would be "relevant to a harassment claim" under § 1692d).

        The plaintiffs have alleged that Oxford's representatives continued calling even after Evans asked them not to do so and called again -- on one occasion -- after he informed them that he was represented by counsel.  Oxford's representatives also allegedly misrepresented themselves as attorneys, threatened to "visit" Evans if he did not repay his debt, and accused Evans of lying about his ability to repay the debt.  On the other hand, the complaint does not disclose even a rough estimate of the total number or frequency of the calls Oxford placed to the plaintiffs, nor does it explain the times of day at which the calls were received.  Thus, while the nature and content of some of the calls might implicate other subsections of the FDCPA -- including other subsections of § 1692d, as discussed above -- the court cannot, in the absence

of any indication of the frequency or pattern of those calls,
conclude that Oxford violated § 1692d(5).

*§ 1692d(6)*

Third, the plaintiffs claim that Oxford's
representatives violated § 1692d(6) by failing to disclose that
"they were calling from a debt collection agency," and "simply
stat[ing] they were calling from an 'attorney's office[.]'"
Pls.' Mem. at 6.

Except in one narrow instance not relevant here,
§ 1692d(6) prohibits debt collectors from placing telephone
calls "without meaningful disclosure of the caller's identity."
15 U.S.C. § 1692d(6).  "Meaningful disclosure" requires the debt
collector to disclose his or her name as well as the name of the
debt collection company's name, and to explain the nature of the
debt collector's business.  <u>Baker v. Allstate Fin. Servs., Inc.</u>,
554 F. Supp. 2d 945, 949 (D. Minn. 2008) (collecting cases); <u>see
also</u> <u>Chatman v. GC Servs., LP</u>, --- F. Supp. 3d ----, No. 14-526,
2014 WL 5783095, at *4 (D.S.C. Nov. 6, 2014) ("Meaningful
disclosure requires that the debt collector state his or her
name, capacity, and provide enough information to the consumer
as to the purpose of the call." (quoting <u>Doshay v. Global Credit
Collection Corp.</u>, 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011))).

Here, the well-pleaded facts in the complaint state that Oxford's representatives "failed to state the name of [their] company and failed to state that the reason for [their] calls was debt collection." Compl. ¶ 13. The plaintiffs also claim that "Oxford misleadingly identified itself as an attorney's office." Compl. ¶ 14. Oxford's representatives gave the plaintiffs some indication that they were calling to collect a debt when they accused Evans of lying about his ability to repay the debt and threatened to "visit" the plaintiffs if they failed to satisfy the debt. Compl. ¶¶ 15-16. But, in light of the defendant's default, the court is at a minimum constrained to accept as true that Oxford failed to identify itself as a debt collector "[d]uring the initial telephone conversation," Compl. ¶ 13, and also "failed to state the name of its company" during all of the calls at issue. Accordingly, Oxford violated § 1692d(6). See Torres v. ProCollect, Inc., 865 F. Supp. 2d 1103, 1105-07 (D. Colo. 2012); Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) ("The [c]ourt concludes that defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's business in the messages left on plaintiff's answering machine.").

15 U.S.C. § 1692e

"Section 1692e broadly prohibits debt collectors from making 'false, deceptive, or misleading' statements in the course of their collection activities, and it includes sixteen illustrative examples of prohibited conduct." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014). "Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer.' The least-sophisticated-consumer test is an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." Id. at 394-95 (internal citation omitted).

The plaintiffs allege that Oxford violated § 1692e(3), which prohibits debt collectors from falsely representing or implying that "any individual is an attorney or that any communication is from an attorney," and also violated § 1692e(11), which requires a debt collector to disclose in its initial communication with the consumer that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." Pls.' Mem. at 6-7 (citing 15 U.S.C. § 1692e(3), (11)).

As discussed above, the complaint establishes that the defendant's representative failed, "[d]uring the initial telephone conversation" with the plaintiffs "to state that the reason for its calls was debt collection."  Compl. ¶ 13. Accordingly, Oxford violated § 1692e(11).  <u>Chatman v. GC Servs., LP</u>, --- F. Supp. 3d ----, No. 14-526, 2014 WL 5783095, at *4, *7 (D.S.C. Nov. 6, 2014) ("Neither message disclosed that . . . the call was for the purpose of collecting a debt.  Thus . . . it appears at first blush that both messages violated the plain language of . . . [§] 1692e(11).").

The plaintiffs' remaining theory of liability appears to be that Oxford violated § 1692e(3) by "misleadingly identif[ying] itself as an attorney's office," Compl. ¶ 13, when, in fact, "Oxford's collectors were not licensed attorneys in the State of West Virginia and had no legal authority to convey as much to [p]laintiffs," Pls.' Mem. at 7.  That latter allegation is not found in the complaint and therefore not established as true by the defendant's default, and labeling Oxford's conduct as "misleading" asserts nothing more than a legal conclusion which is likewise not established by default.[6]

---

[6] In an attempt to bolster their claim, the plaintiffs have submitted, as an exhibit to their motion for default judgment, a screen shot of the defendant's website which states, among other things, that:

As a result, the court cannot conclude on the basis of the well-pleaded facts that Oxford violated § 1692e(3).

## 15 U.S.C. § 1692f

"Section 1692f prohibits debt collectors from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" Mavilla v. Absolute Collection Serv., Inc., 539 F. App'x 202, 207 (4th Cir. 2013) (quoting 15 U.S.C. § 1692f). "The section provides a list of acts exemplifying unconscionable debt collection activities," id., but the plaintiffs have not accused Oxford of engaging in any of those.  Rather, the plaintiffs argue that "by continually harassing [them] with telephone calls, accusations, and threats, Oxford used unfair and unconscionable means to collect a debt" that generally violated § 1692f.

---

Oxford Law is prepared to defend our clients by instituting legal proceedings and resolve disputes in a courtroom when needed or required as a last resort. Our attorneys are experienced throughout [Pennsylvania, New Jersey, Iowa, and Minnesota.] Pls.' Mot., Ex. D.  Those facts are likewise not found within the complaint, and therefore not established by Oxford's default.  Even if they were, however, the FDCPA only prohibits a debt collector from falsely representing or implying that he is an attorney, 15 U.S.C. § 1692e(3), and courts have concluded that the FDCPA "does not limit the definition of attorney based on the state of licensure and state of practice."  See, e.g., Nichols v. Frederick J. Hanna & Assocs., PC, 760 F. Supp. 2d 275, 278-79 (N.D.N.Y. 2011) (internal quotation marks and citation omitted).

As discussed above, that type of conduct is punishable under § 1692d, and so the court will not apply § 1692f to punish it twice.  See Lembach v. Bierman, 528 F. App'x 297, 303-04 (4th Cir. 2013) ("[T]he courts use § 1692f to punish conduct that FDCPA does not specifically cover.  Because the [plaintiffs] rely on conduct that is covered by § 1692e and do not allege any separate or distinct conduct to support a § 1692f violation, their claim fails for this reason as well.").

### 15 U.S.C. § 1692g

"Section 1692g requires debt collectors to send written 'validation notices' to debtors informing them of their rights to require verification and dispute a debt.  Pursuant to § 1692g, the validation notice must include the amount of the debt, the name of the creditor, and 'a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.'".  Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 392 (4th Cir. 2014) (quoting 15 U.S.C. § 1692g(a)(1)-(3)).

The complaint alleges that Oxford "failed to send [p]laintiffs an initial letter within five days of its initial contact with" them.  Compl. ¶ 35.  Accordingly, Oxford violated § 1692g.

25

### 2. WVCCPA Claims

The plaintiffs also contend that much of the conduct described above violated various provisions of the WVCCPA.

#### Section 46A-2-123

Section 46A-2-123 states that, "Unless a licensed attorney in this State, no debt collector shall engage in conduct deemed the practice of law," including making the "false representation, direct[ly] or by implication, that any person is an attorney[.]" W. Va. Code § 46A-2-123(a). The plaintiffs maintain that Oxford violated that prohibition by holding itself out as an attorney's office, even though its representatives were not licensed as attorneys in the State. See Pls.' Mem. at 9. As discussed above, however, the complaint does not state (and the defendant's default therefore does not establish) that Oxford's representatives were not licensed West Virginia attorneys. Accordingly, the plaintiffs have not established that Oxford violated section 46A-2-123(a).

#### Section 46A-2-124

Second, the complaint alleges that Oxford violated section 46A-2-124(a) by expressly or implicitly threatening to use "violence or other criminal means to cause harm to

26

[p]laintiffs," and violated section 46A-2-124(f) by "violating provisions of the [FDCPA.]" Compl. ¶¶ 44, 45.  The motion for default judgment more specifically asserts that Oxford violated those provisions by threatening to "visit" the plaintiffs.

Section 46A-2-124(a) prohibits "[t]he use, or express or implicit threat of use, of violence or other criminal means, to cause harm to . . . [a] person," in connection with the collection or attempted collection of a debt.  W. Va. Code § 46A-2-124(a).  As noted, Oxford's representatives threatened to "visit" the plaintiffs if their debt was not paid, Compl. ¶ 16, and both Evans and Woods understood that statement as an implicit "physical threat," Evans Aff. ¶ 7; Woods Aff. ¶ 7. Consequently, Oxford violated section 46A-2-124(a).

Section 46A-2-124(f) bars debt collectors from threatening "to take any action prohibited by [the WVCCPA] or other law regulating the debt collector's conduct."  W. Va. Code § 46A-2-124(f).  In addition to section 46A-2-124(a), § 1692d(1) of the FDCPA -- "another law regulating [Oxford's] conduct" -- also prohibits the "use or threat of use of violence" in connection with the collection of a debt.  15 U.S.C. § 1692d(1). Accordingly, Oxford also violated section 46A-2-124(f).  Those two section -124 violations are closely related and treated as a combined violation.

27

Section 46A-2-125

Third, the plaintiffs assert that Oxford's conduct violated two provisions of section 46A-2-125.  The first, section 46A-2-125(b), bars the "placement of telephone calls without disclosure of the caller's identity and with the intent to," among other things, "threaten any person at the called number[.]"  As discussed above, the complaint establishes that, "[d]uring the initial telephone conversation and all those thereafter, Oxford failed to identify the name of its company." Compl. ¶ 13.  And the complaint also establishes that, during at least one of those calls, Oxford's representative threatened to "visit" the plaintiffs if they did not pay their debt.  Compl. ¶ 16.  Consequently, the defendant is deemed to have violated section 46A-2-125(b) on at least one occasion.

Next, the plaintiffs seek judgment that Oxford violated section 46A-2-125(d), which prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number."  The complaint provides no indication of the number of calls Oxford placed to the plaintiffs or any sense of how frequently those calls were made.  The only suggestion of the

timing of Oxford's calls is the statement that "[d]efendants caused a telephone to ring or engaged [p]laintiffs in telephone conversation . . . at unusual times or at times known to be inconvenient." Compl. ¶ 48. But that conclusory allegation simply recites the applicable statutory text, and is not established by Oxford's default. See Hoa Huynh, 503 F.3d at 854 ("DirecTV's allegations that parrot the [statutory language] . . . are not well-pleaded facts; they are simply DirecTV's legal conclusions, which appellees are not held to have admitted through default.").

It does appear, at the very least, that Oxford called the plaintiffs "repeatedly," see Compl. ¶ 12-13, but, as with the plaintiffs' federal claims, the complaint simply provides too little detail to determine whether the repeated calls were intended to "annoy, abuse, oppress or threaten" the plaintiffs. As a result, the court concludes that the plaintiffs have not established a violation of section 46A-2-125(d).

### Section 46A-2-127

Fourth, the plaintiffs contend that Oxford violated section 46A-2-127(h), which prohibits debt collectors from making or creating "[a]ny false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business."

29

Plaintiffs claim that Oxford violated that provision by identifying "themselves solely as an 'attorney's office' and neglect[ing] to state that the very reason for the calls was for debt collection." Pls.' Mem. at 11. As noted, the complaint alleges that the defendant failed to identify itself as a debt collector during the initial call with the plaintiffs, which establishes at least one violation of section 46A-2-127(h).

### Section 46A-2-128

Fifth, and "[f]inally, by continually harassing [them] with telephone calls, accusations, and threats," the plaintiffs contend that Oxford "used unfair and unconscionable means to collect a debt in violation of [s]ection 46A-2-128." Pls.' Mem. at 11. That section contains a non-exhaustive list of prohibited conduct, one of which appears applicable. Specifically, section 46A-2-128(e) prohibits debt collectors from communicating with a consumer "whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained[.]"

Here, the well-pleaded allegations in the complaint establish that Evans "informed Oxford that [p]laintiffs had retained legal representation and provided Oxford with their attorney's contact information," Compl. ¶ 19, but Oxford nevertheless "proceeded to place an additional call to

30

[p]laintiffs on March 14, 2013," Compl. ¶ 20.  Accordingly,

Oxford violated section 46A-2-128(e) on one occasion.


    B. Damages

                          1. FDCPA

        With respect to damages, the FDCPA provides, in

pertinent part, as follows:

    [A]ny debt collector who fails to comply with any
    provision of this subchapter with respect to any
    person is liable to such person in an amount equal to
    the sum of--

        (1) any actual damage sustained by such person as
    a result of such failure;

        (2)(A) in the case of any action by an
    individual, such additional damages as the court may
    allow, but not exceeding $1,000[.]

15 U.S.C. § 1692k(a).  "In determining the amount of liability,"

§ 1692k(b) further provides that, "the court shall consider,

among other relevant factors[,] . . . the frequency and

persistence of noncompliance by the debt collector, the nature

of such noncompliance, and the extent to which such

noncompliance was intentional[.]"  Id. § 1692k(b)(1).  Finally,

actual damages are not a prerequisite to the recovery of

statutory damages.  See Miller v. Wolpoff & Abramson, L.L.P.,

321 F.3d 292, 307 (2d Cir. 2003) ("The FDCPA provides for

liability . . . and permits the recovery of statutory damages up

                              31

to $1,000 in the absence of actual damages."); Keele v. Wexler,
149 F.3d 589, 593-94 (7th Cir. 1998) (same); Baker v. G.C.
Servs. Corp., 677 F.2d 775, 780 (9th Cir. 1982) ("There is no
indication in the statute that award of statutory damages must
be based on proof of actual damages."); see also Shoup v.
McCurdy & Candler, LLC, 465 F. App'x 882, 885 (11th Cir. 2012)
(per curiam) (stating that the FDCPA "provides a claim for
statutory damages based on any violation of the statute.").

        Here, the complaint alleges that the plaintiffs
suffered "humiliation, anger, anxiety, emotional distress, fear,
frustration and embarrassment."  Compl. ¶¶ 22-23; see also Evans
Aff. ¶ 12 (stating that Evans "suffered damages, anger, fear,
embarrassment, anxiety, emotional distress, and frustration as a
result of Oxford's" actions); Woods Aff. ¶ 12 (same).  They seek
statutory damages and actual damages.

        Nothing in the record supports an award of actual
damages in this case.  The factual pleadings in the complaint
concerning liability are accepted as true upon default, but
allegations with respect to damages are not.  S.E.C. v.
Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (citing Dundee
Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d
1319, 1323 (7th Cir. 1983)).  Although the plaintiffs claim that
they suffered a variety of dignitary harms as a result of

Oxford's debt collection calls, their affidavits (which constitute the entire corpus of evidence outside the pleadings in this matter) do not substantiate or quantify any of these purported injuries, or contain any information beyond the conclusory allegations found in the complaint.

The plaintiffs maintain that "[d]amages for emotional distress may be recovered under the FDCPA without proving the elements of a state tort," and cite to a number of cases in support of that proposition.  Pls.' Mem. at 12.  They fail to note that other courts have, in fact, reached the opposite conclusion.  <u>See</u> <u>Costa v. Nat'l Action Fin. Servs.</u>, 634 F. Supp. 2d 1069, 1077-78 (E.D. Cal. 2007) (collecting cases highlighting the split in authority).  But even assuming for the sake of argument that the plaintiffs are correct and a lower standard of proof applies, something more than "transitory symptoms of emotional distress and unsupported self-serving testimony" is still required to prove actual emotional distress damages.  <u>Id.</u>; <u>see also</u> <u>Sloane v. Equifax Info. Servs., LLC</u>, 510 F.3d 495, 503 (4th Cir. 2007) (noting, in a case involving damages for violations of the Fair Credit Reporting Act, that a plaintiff must "reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements." (internal quotation marks and citation omitted)); <u>Wantz v.</u>

Experian Info. Solutions, 386 F.3d 829, 834 (7th Cir. 2004)
("Where, as here, the plaintiff's own testimony is his only
evidence of emotional damages, he must explain the circumstances
of his injury in reasonable detail and not rely on conclusory
statements, unless the facts underlying the case are so
inherently degrading that it would be reasonable to infer that a
person would suffer emotional distress from the defendant's
action." (internal quotation marks and citation omitted)),
abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr,
551 U.S. 47 (2007).

On the other hand, an award of statutory damages is
appropriate in this case. As noted, the FDCPA permits the
recovery of statutory damages even in the absence of actual
damages. See, e.g., Miller, 321 F.3d at 307. Having concluded
that Oxford violated several provisions of the FDCPA, the court
is satisfied that the plaintiffs are entitled to $1,000 in
statutory damages pursuant to § 1692k(a)(2)(A). See Frazier v.
Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1365-66
(N.D. Ga. 2011) (adopting report and recommendation) (awarding
$1,000 in statutory damages for "a handful" of FDCPA
violations); Obenauf v. Frontier Fin. Grp., Inc., 785 F. Supp.
2d 1188, 1194-95 (D.N.M. 2011) (awarding $300 in statutory
damages for a single phone call in violation of FDCPA); Hutchens

34

v. West Asset Mgmt., Inc., No. 11-996, 2013 WL 1337178, at *6
(S.D. W. Va. March 29, 2013) (awarding $1,000 in statutory
damages for FDCPA violations); Jensen v. Omni Credit Servs. of
Fla., Inc., No. 12-405, 2013 WL 1183317, at *2 (D. Or. Feb. 25,
2013) (awarding $1,000 for some unspecified number of calls in
violation of FDCPA); cf. also DIRECTV, Inc. v. Huynh, 318 F.
Supp. 2d 1122, 1129-31 (M.D. Ala. 2004) (holding that a damages
hearing is not necessary to calculate statutory damages and
awarding statutory damages on the basis of affidavits and record
evidence).

2. WVCCPA

Section 46A-5-101(1) of the WVCCPA states, in
pertinent part:

> If a creditor has violated the provisions of this
> chapter applying to . . . any prohibited debt
> collection practice . . ., the consumer has a cause of
> action to recover actual damages and in addition a
> right in an action to recover from the person
> violating this chapter a penalty in an amount
> determined by the court not less than one hundred
> dollars nor more than one thousand dollars.

The statutory damages may be adjusted to account for inflation,
W. Va. Code § 46A-5-106, and, as in cases under the FDCPA,
recovery of actual damages is not a prerequisite to the recovery
of statutory damages, Vanderbilt Mortg. & Fin., Inc. v. Cole,
740 S.E.2d 562, 567-71 (W. Va. 2013).

State law, like federal law, requires a plaintiff seeking to recover emotional distress damages to "reasonably and sufficiently explain the circumstances of his injury and not resort to mere conclusory statements." Slack v. Kanawha Cnty. Housing & Redevelopment Auth., 423 S.E.2d 547, 554-55 (W. Va. 1992) (internal quotation marks and citation omitted). Consequently, to the extent they are sought, the court concludes, for the reasons discussed above, that the plaintiffs conclusory affidavits in support of their motion for default judgment do not establish that they are entitled to actual damages under the WVCCPA.

However, as with the federal claims, an award of statutory damages is appropriate.  The court has already concluded that Oxford violated four sections of the WVCCPA. Adjusted for inflation, each violation warrants an award ranging between $480 and $4,801.  Oxford's violations of sections 46A-2-125(b), -127(h), and -128(e) appear to be of a limited nature, and merit a penalty of $1,440 each, adjusted for inflation.  On the other hand, given that Oxford's violations of section 46A-2-124(a) and (f) involved an implicit threat of physical harm, the court finds that a combined penalty of $4,801, adjusted for inflation, is appropriate.  Those sums aggregate $9,121.

36

C. Attorney's Fees and Costs


     Last, the plaintiffs also seek to recover their
attorney's fees and costs, Pls.' Mem. at 14-15, as authorized by
both statutes, <u>see</u> 15 U.S.C. § 1692k(a)(3); W. Va. Code § 46A-5-
104.

     As our court of appeals recently summarized in an
unpublished opinion:

> [T]he district court['s] . . . discretion in awarding
> attorney's fees [under the FDCPA] is guided by the
> twelve factors first set forth in <u>Johnson v. Ga.</u>
> <u>Highway Express, Inc.</u>, and adopted by [the Fourth
> Circuit] in <u>Barber v. Kimbrell's, Inc.</u>  The <u>Barber</u>
> factors include such considerations as the time and
> labor required, the difficulty of the issues
> litigated, customary fees in similar situations, and
> the results obtained.  These factors, however, usually
> are subsumed within the initial calculation of hours
> reasonably expended at a reasonable hourly rate[,
> <u>i.e.</u>, the lodestar].  When . . . the applicant for a
> fee has carried his burden of showing that the claimed
> rate and number of hours [expended] are reasonable,
> the [lodestar] is presumed to be the reasonable fee
> contemplated by the statute.  The FDCPA, however, does
> not mandate a fee award in the lodestar amount, and
> the district court maintains the discretion to depart
> from it in appropriate circumstances.

<u>Randle v. H&P Capital, Inc.</u>, 513 F. App'x 282, 283-84 (4th Cir.
2013) (per curiam) (internal quotation marks and citations
omitted) (fourth, fifth, and sixth alterations in the original).

     When calculating reasonable fees, establishing the
hourly rate is generally the critical inquiry.  <u>Westmoreland</u>

Coal Co. v. Cox, 602 F.3d 276, 289 (4th Cir. 2010) (quoting

Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (internal

citations and quotations omitted)).  The fee applicant bears the

burden of establishing the reasonableness of the requested rate.

Id.

> In addition to the attorney's own affidavits, the fee
> applicant must produce satisfactory specific evidence
> of the prevailing market rates in the relevant
> community for the type of work for which he seeks an
> award. Although the determination of a "market rate"
> in the legal profession is inherently problematic, as
> wide variations in skill and reputation render the
> usual laws of supply and demand largely inapplicable,
> the Court has nonetheless emphasized that market rate
> should guide the fee inquiry.

Id. (quoting Plyler, 902 F.2d at 277 (internal citations and

quotations omitted)).  In determining the market rate, the court

should consider evidence of what attorneys earn for performing

similar services in similar circumstances, "which, of course,

may include evidence of what the plaintiff's attorney actually

charged his client."  Id. (quoting Depaoli v. Vacation Sales

Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007)).  Examples

of the specific evidence that courts have found "sufficient to

verify the prevailing market rates are affidavits of other local

lawyers who are familiar both with the skills of the fee

applicants and more generally with the type of work in the

relevant community."  Id. (quoting Robinson v. Equifax Info.

Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009)).

In this case, while both the complaint and the motion for default judgment request "reasonable attorney's fees," Compl. at Prayer for Relief; Pls.' Mem. at 15, the plaintiffs have not presented to the court for its review an overall figure, an hourly rate, an estimate of the hours expended, or evidence supporting any of the other factors noted above. Accordingly, the request for attorney's fees and costs is denied without prejudice to the plaintiffs renewing their request, accompanied by the documentation discussed above, on or before March 16, 2015, with a copy thereof to be served on the defendant who may respond on or before March 26, 2015.

VI. Conclusion

For the reasons discussed above, it is ORDERED as follows:

1.  That the plaintiffs' motion for default judgment be, and it hereby is, granted to the extent set forth above, and otherwise denied;

2.  That the plaintiffs be, and they hereby are, awarded against Oxford Law, LLC the sum of $10,121; and

3.  That the plaintiffs' claims against John Does 1-10 be, and they hereby are, dismissed without prejudice.

39

The Clerk is directed to forward copies of this order to all counsel of record and to the defendant, by certified mail, return receipt requested, at 311 Veterans Highway, Suite 100A, Levittown, Pennsylvania, 19056.

DATED: February 24, 2015

John T. Copenhaver, Jr.
United States District Judge